UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────

LISA P.,[1]

                                  Plaintiff,          Case # 19-CV-1155-FPG

v.                                                       DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.
───────────────────────────────────────

## INTRODUCTION

Plaintiff Lisa P. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 12. For the reasons that follow, the Commissioner's motion is GRANTED, Plaintiff's motion is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

In November 2012, Plaintiff protectively applied for SSI with the Social Security Administration ("the SSA"). Tr.[2] 107. Her application was denied during the administrative proceedings, but she obtained remand on appeal to the district court. *See Palmer v. Berryhill*, No. 16-CV-822, 2018 WL 797281 (W.D.N.Y. Feb. 9, 2018). Thereafter, Administrative Law Judge John P. Costello (the "ALJ") issued a partially favorable decision, finding Plaintiff to be disabled

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF Nos. 6, 7.

1

beginning February 13, 2019.  *See* Tr. 837-50.  Plaintiff has now filed this action for review of that decision.  ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to Step Two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant

restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to Step Three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 416.920(e)-(f).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.20(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her

application date.  Tr. 840.  At step two, the ALJ found that Plaintiff had severe impairments of major depressive disorder, panic disorder, eating disorder, post-traumatic stress disorder, obesity, carpal tunnel syndrome, bilateral shoulder abduction, sciatica, migraine headaches, and polysubstance dependence in remission.  *Id.*  At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment.  Tr. 840-42.

Next, the ALJ crafted two sets of RFCs—one for the period between the application date and February 13, 2019, and one for the subsequent period.  Tr. 842, 846.  As to the earlier period, the ALJ found that Plaintiff retained the RFC to perform sedentary work with additional limitations: she could perform simple, routine tasks with occasional interaction with co-workers and the general public; she could work low-stress jobs that required only occasional decision-making; and she could frequently reach, handle, and finger bilaterally.  Tr. 842.  At step four, the ALJ found that Plaintiff had no past relevant work.  Tr. 848.  At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed for the period ending February 13, 2019, but not for the subsequent period.  Tr. 848-49.  The ALJ therefore found that Plaintiff was not disabled prior to February 13, 2019, but became disabled thereafter.  Tr. 849-50.

**II.   Analysis**

Plaintiff argues that remand is warranted because the ALJ erred in (1) evaluating the opinion of consultative examiner Elizama Montalvo, M.D., specifically as it related to Plaintiff's ability to sit; and (2) crafting the RFC restrictions related to her mental impairments.  For the reasons discussed below, the Court disagrees.

### a. Dr. Montalvo's Opinion

On January 28, 2013, Dr. Montalvo assessed Plaintiff as part of an internal medicine examination. Tr. 620-24. She diagnosed Plaintiff with, *inter alia*, low back pain associated with the sciatic nerve, and she opined that Plaintiff had moderate limitations in "bending, lifting, carrying, pushing, sitting, and standing." Tr. 623. The ALJ gave Dr. Montalvo's opinion partial weight and limited Plaintiff to sedentary work. Tr. 845-46.

Plaintiff now argues that the ALJ erred by failing to include any additional RFC restrictions to account for the moderate sitting limitation that Dr. Montalvo identified. *See* ECF No. 11-1 at 12-16. The Court is not convinced.

The premise of Plaintiff's argument is that a moderate sitting limitation is inconsistent with sedentary work, and therefore demanded additional functional restrictions beyond what the ALJ included. As a general proposition, that is not necessarily the case. Sedentary work requires an individual to "remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2–hour intervals." *Natasha D. v. Comm'r of Soc. Sec.*, No. 19-CV-515, 2020 WL 1862966, at *9 (N.D.N.Y. Apr. 13, 2020). It does not require a worker "to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). As a result, a moderate limitation in the ability to sit does not necessarily preclude a finding that the claimant can meet the sitting demands of sedentary work. *See Zacharopoulos v. Saul*, No. 19-CV-5075, 2021 WL 235630, at *14 (E.D.N.Y. Jan. 25, 2021) (collecting cases); *Muhammad v. Comm'r of Soc. Sec.*, No. 18-CV-6041, 2019 WL 2295402, at *4 (W.D.N.Y. May 30, 2019) ("A claimant is not necessarily disabled simply because she is moderately limited in her ability to sit or stand."). Still, the ALJ must provide a sufficient explanation as to why, despite the

claimant's moderate sitting limitation, the claimant "could perform sedentary work." *Muhammad*, 2019 WL 2295402, at *4; *Toomey v. Colvin*, No. 15-CV-730, 2016 WL 3766426, at *4 (W.D.N.Y. July 11, 2016) (emphasizing that an explanation is necessary to allow the district court to conduct meaningful judicial review).

In this case, the Court can sufficiently glean how the ALJ incorporated Dr. Montalvo's moderate sitting limitation into his RFC finding. The ALJ stated that he translated Dr. Montalvo's "moderate limitations" in standing and lifting to mean that Plaintiff could "frequently" stand and lift, *i.e.*, she could engage in those activities for one-third to two-thirds of each workday. Tr. 846; *see also Cherry v. Colvin*, No. 13-CV-1440, 2016 WL 164988, at *3 (D. Conn. Jan. 14, 2016) (defining "frequent"). By the same logic—which the ALJ appears to have applied implicitly—a moderate sitting limitation would translate to a restriction to frequent sitting, which approximates the sitting requirements of sedentary work. *See* SSR 83-10, 1983 WL 31251, at *6; *see also Vacanti v. Comm'r of Soc. Sec.*, No. 18-CV-368, 2020 WL 836387, at *2 (W.D.N.Y. Feb. 20, 2020) ("[A]n ALJ's failure to fully express her reasoning does not justify remand so long as the Court can glean the rationale of the decision."). Other courts have approved of such reasoning. *See Danielle S. v. Comm'r of Soc. Sec.*, No. 19-CV-1359, 2021 WL 231511, at *4 (W.D.N.Y. Jan. 25, 2021) (collecting cases for the proposition that "[a] moderate limitation is not inconsistent with a finding that an individual can engage in frequent, but not constant activity"); *Arthur L. v. Berryhill*, No. 18-CV-304, 2019 WL 4395421, at *5 (N.D.N.Y. June 6, 2019) ("The ability to sit 'frequently' is consistent with the ability to do a full range of sedentary work.").

Plaintiff does not develop any argument challenging the soundness of the ALJ's (implicit) rationale, and therefore the Court need not further evaluate it. *See Smith v. Comm'r of Soc. Sec.*, No. 19-CV-6527, 2020 WL 4333340, at *3 n.2 (W.D.N.Y. July 28, 2020). Plaintiff only argues

that the ALJ rejected Dr. Montalvo's sitting restriction *without* a rationale. To the contrary, the ALJ adopted the sitting restriction—albeit implicitly—and interpreted it to be consistent with the RFC determination. Accordingly, Plaintiff's argument does not warrant remand.

### b. Plaintiff's Mental Impairments

Plaintiff next argues that, for two reasons, the ALJ erred in his assessment of her mental impairments. First, the ALJ discounted all of the relevant medical opinions, leaving him "with nothing but his lay opinion to rely upon in determining" her mental RFC. ECF No. 11-1 at 16. Second, the ALJ failed to explain why he limited Plaintiff to occasional interactions with co-workers and the public but included no limitations with respect to interactions with supervisors.[3] The Court is not persuaded.

As a general matter, although Plaintiff broadly alludes to the ALJ's alleged reliance on his own lay opinion, she makes little effort to specifically identify which aspects of the mental RFC were the product of lay opinion. *See* ECF No. 11-1 at 16-20; ECF No. 13 at 3-4. At least facially, each of the functional restrictions the ALJ identified with respect to Plaintiff's mental impairments appears to be supported by the opinion of consultative examiner Kavitha Finnity, Ph.D. *See* Tr. 616-19; *see also Danielle S.*, 2021 WL 231511, at *4 (rejecting argument that ALJ discounted "all the medical opinions of record" where the mental RFC finding "was almost entirely consistent with [the consultative examiner's] opinion").

For the period prior to February 13, 2019, the ALJ concluded that Plaintiff's mental impairments limited her to (1) performing simple, routine tasks; (2) occasionally interacting with

---

[3] Plaintiff also makes passing references to her stress restrictions and the ALJ's rejection of Katherine Duffy's opinion, but she does not meaningfully develop those arguments in her briefing. *See* ECF No. 11-1 at 17, 20; *see also United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

co-workers and the general public; and (3) working in low-stress jobs that required only occasional decision-making. Tr. 842. Consistent with those restrictions, Dr. Finnity opined that Plaintiff (1) can "understand simple directions" and "perform simple tasks"; (2) has difficulty "relating with others"; and (3) can make "appropriate decisions" but has difficulty "dealing with stress." Tr. 618. The only difference that Plaintiff explicitly disputes is that Dr. Finnity believed Plaintiff had difficulty "relating with others" generally, while the ALJ concluded that Plaintiff was only limited in her interactions with co-workers and the public, not supervisors. *See* Tr. 618, 842, 845.

It is true that, to the extent an ALJ distinguishes between the groups with whom a claimant can interact, he must explain and provide support for that distinction. *See Luke H. v. Saul*, No. 19-CV-720, 2020 WL 4346789, at *4 (N.D.N.Y. July 28, 2020); *see also Perez v. Comm'r of Soc. Sec.*, No. 18-CV-1395, 2020 WL 1226895, at *3 (W.D.N.Y. Mar. 13, 2020) ("A limitation to interacting with the public is not equivalent to a limitation to interacting with coworkers or supervisors."). But here, the ALJ's rationale for the distinction is fairly discernible. In the decision, the ALJ highlighted Plaintiff's hearing testimony concerning her ability to interact with others. Tr. 843. At the hearing, Plaintiff testified that she suffers from stress and anxiety in connection with large crowds of strangers. *See* Tr. 899. Plaintiff "start[s] feeling physically sick" when there are "too many people around." *Id.* She cannot take a bus because she "feel[s] trapped." *Id.* Nevertheless, Plaintiff is able to shop in public if "it's not crowded." Tr. 900. Plaintiff also stated that she "like[s] people" but does not "like to be around them." Tr. 901; *see also* Tr. 254 (indicating that she has no problems "getting along" with "people in authority"). This testimony appears to be the basis for the distinction the ALJ drew between co-workers and the public versus supervisors—presumably because interactions with the former groups would be more likely to

involve strangers and large gatherings of people, which would induce Plaintiff's anxiety and stress.[4]  *See* Tr. 841, 843, 845.

Plaintiff does not explain why the ALJ could not draw this inference from her testimony and thereby make the distinction he did concerning supervisors.  As with her previous argument, she asserts only that the ALJ made the distinction *without* a rationale.  *See* ECF No. 11-1 at 17, 20.  That is not the case.  Accordingly, Plaintiff is not entitled to relief on the ground she raises.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is DENIED.  The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: March 4, 2021
       Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

---

[4] The Court notes that, since the ALJ relied on Plaintiff's own testimony about her functional abilities, there is no concern that the ALJ impermissibly "play[ed] doctor" to determine Plaintiff's functional limitations. *Nancy B. v. Comm'r of Soc. Sec.*, No. 19-CV-6574, 2021 WL 716705, at *3 (W.D.N.Y. Feb. 24, 2021); *see also Doney v. Astrue*, 485 F. App'x 163, 165 (9th Cir. 2012) (summary order) (ALJ could reasonably reject treating physician's opinion that claimant needed to elevate feet for two hours each day where claimant's testimony permitted reasonable contrary inference).